please be seated and will you call the next case please 3-11-07-87, people of the state of Illinois, actively with Thomas Serrato, Mr. Corzell-Cole, and Officer Kerry Bryson. Ms. Bryson? May it please the Court, Counsel, Kerry Bryson, I represent Corzell-Cole. This case is currently before the Court following the second stage dismissal of Corzell-Cole's post-conviction petition, which raises a claim of actual innocence based on an affidavit from Travers-Guy, who was actually the shooter in this case. The trial judge granted a state's motion to dismiss at the second stage based on two grounds. First, finding that Travers-Guy had nothing to lose in offering the affidavit and statement in this case, and that the information in that statement and affidavit was not so conclusive that it would be likely to change the outcome on a retrial. This case was previously before this Court following the first stage summary dismissal of the same claim in the post-conviction petition. So at this point, what has changed? Factually nothing. We're looking at the same statement from the same individual supporting the same claim. Procedurally, we've moved from the first stage to the second stage. So the standard is different. And the standard at the second stage in the trial court and for this Court to review is whether there's a substantial showing made of a claim of actual innocence. What's a substantial showing? Well, the case law says it's something more than a bare allegation but less than proof by a preponderance. And in this case, based on Travers-Guy's affidavit, we would assert that the defendant has met that requirement and made that showing. In looking at a claim of actual innocence, the Court looks at four factors that were established in the case of Molestat. Was it newly discovered? Could it have been discovered sooner through the exercise of due diligence? Is it material and not merely cumulative? And then is it likely to change the outcome on a retrial? Whether it's newly discovered and whether there was due diligence in this case aren't really disputed. The state doesn't seem to be arguing on those points. And so I'm going to focus on whether it was material and whether it was so conclusive it was likely to change the result on retrial. Materiality, again, Molestat speaks to what is material and not merely cumulative, saying that it's cumulative only if it adds nothing to what was already before the trial effect. And in this case, it adds plenty. The information in Guy's statement was not before the trial effect in this case. It contradicts what was testified to by state witnesses. In some respect, it's corroborated by the testimony of state witnesses, but it provides new information, additional information, specifically as to what was intended in this case. Corazel Cole was convicted on an accountability theory. It was not the principal in this case. Travera's Guy was. Guy's statement, his affidavit, and his testimony in his own trial suggest there was no preconceived plan, no intent to go out and commit this shooting, that it was a spontaneous act of self-defense. And this court recognized that in its prior decision in this case on the appeal from the summary dismissal. This court also recognized it's difficult then to see how the information in Guy's statement would not present new questions for the trial effect, being as that his statement speaks directly to the intent and that intent is directly relevant to whether or not Corazel Cole was accountable. Guy's statement is that they pulled up at this intersection. The van that was carrying both the decedent and then the injured victim was next to them. He looked over, he sees the driver of the van, who is the decedent, make what he describes as a frowned up face. He looks angrily at him. He sees, Travera's Guy sees the door open, the driver's door open. First he sees the van jerk as though it's being put into park. He sees the door open. He sees what he believes is a gun in the decedent's hand. Seeing that, he hears Corazel Cole, the defendant in this case, yell at him to get down. Guy, as he ducks down, reaches for his own gun, puts his arm out the window, and shoots in what he describes as an act of self-defense. That is a question that should be put to the trier of fact in this case. Guy gave that same testimony at his own trial. At the time of Corazel Cole's original trial, Travera's Guy was a fugitive. He was not available to testify, couldn't have testified to this version of events for this defendant. But at his own trial, he testified to that same version of events that he has provided in the affidavit supporting this petition. And his jury, Travera's Guy's jury, convicted him of second degree murder and attempt first degree murder. Second degree on an imperfect self-defense theory. Apparently giving some credibility to his testimony. Again, his testimony is consistent. His story has been consistent throughout the proceedings in this case. Guy's testimony is of a character that it is material, it's not cumulative, and it's also likely to change the result on a retrial. The state's argument and the position all along has been that Corazel Cole's responsibility for the shooting is essentially proved by the location of the car, where he stopped his car in relation to where the van was stopped, and then by his behavior after the shooting in driving away and then leaving the jurisdiction. Well, the position of the car alone, and again, this court recognized this in the last decision, I feel like I'm making the same arguments we made last time we were here, essentially. But the position of the car alone is not indicative of a specific intent to aid Guy. He stopped the car. He wasn't up directly equal with the van. Well, I would submit that that's kind of how normal people drive. I don't always stop directly next to the car in the lane next to me. Sometimes maybe the van was pulled up past the crosswalk line. Maybe he stopped and he was inching up. I mean, we don't all drive exactly the same all the time. The position of the car is not enough to show a specific intent here, especially when considered again, and we have to be looking at, well, what was the evidence at trial, and now what do we have that's new? And in considering those things together, is there a question that should be put to the trier effect here? Can a better determination of guilt be made if we present all this evidence to the trier effect? And it can. As for the defendant's behavior... I mean, that's a good question, but is that the standard? I mean, can a better determination be made, or has it got to be as likely to change the outcome? Well, I mean, that's actually language that's in MOLSTAT also, is that considering all of the evidence taken together, which is both what was presented at trial and what we have that's new, can a better determination of guilt be made? It's probably an artful language, but better determination of guilt means that an outcome of innocence could be determined. It probably is. Can a better determination of guilt or not guilt? Can we have a better assessment of what happened? Is it likely to change the result? We don't have to show it would change the result. That's not the question for this court. It wasn't the question for the trial court. The question is, is it of such a character that it's likely to change the outcome? I would submit that it is. Which is Guy's testimony that this was self-defense. Exactly. And you're saying that testimony, along with positioning of the car and the testimony of the defendant? It's likely to change the outcome here. What we had before Guy's testimony was essentially relying on the positioning of the car to show the defendant's intent. We have a defendant, the accountable person in this case, convicted of first-degree murder, and the actual shooter convicted of second-degree, because he was able to testify at his own trial to what his intent was or wasn't. He was not available to offer that same testimony when Corzell Cole was tried. Guy's affidavit, his statement now, is consistent with what his trial testimony was. It's corroborated by a passenger in the van who also testified at the defendant's trial that, in fact, the driver did open his door just prior to when the shooting started. This was spontaneous self-defense if we look at what Guy would testify to. The prior effect should be given the opportunity to consider that, because it goes directly to whether the defendant is accountable or not. Or accountable to what degree? I mean, he's found accountable of first-degree. He is found accountable of first-degree. But it could come down to he's not accountable at all. But it could be that he's not accountable to first-degree, but perhaps. That could also be. But that should be submitted to the trier of fact. That's why we should be. We should have at least had an evidentiary hearing. I submit there's enough for a new trial here, but I recognize the stage we're at. It should be submitted to the trier of fact to determine that, because this is new evidence. It's material evidence. It's very significant evidence in this case as to what the intent was. To have the defendant be accountable, he had to have the subjective desire, the subjective intent to aid Traveris Guy. Well, Traveris Guy's testimony goes directly to that point, directly to whether or not the defendant was accountable. Was there a plan? Did they intend to do this? Or did it just happen? His testimony is that it was spontaneous. It just happened. A trier of fact ought to have the opportunity. Consider that the defendant should have the opportunity to have that question submitted to the trier of fact. Taken as true, and that's what we have to do at the second stage of proceeding, take Traveris Guy's testimony, his statement, as true. The defendant's petition made a substantial showing of a claim of actual innocence, and we would ask that you would reverse and remand this matter for additional proceedings again in this case. Thank you, Ms. Bryson. Mr. Arado. Good morning, Your Honors. The standard that has to be decided is set forth by the Illinois Supreme Court in its recent decision of Edwards, which you cited in our brief. It is more likely than not that no reasonable juror would have convicted petitioner based upon this new evidence. I think you have to look at the totality of the evidence and consider whether, if Traveris Guy had testified to this statement, whether no reasonable juror would have convicted him. There is evidence that supports his guilt, Corzell Cole's guilt. Didn't a reasonable jury find, after hearing Guy's testimony, that his testimony was somewhat credible, that instead of convicting him of first-degree murder, that they, in fact, convicted him of second-degree murder? It is true that he was convicted of second-degree murder. However, as the law states, it doesn't matter whether the principal is acquitted or found guilty of lesser. But you're saying we have to, under Edwards, their burden is to show that a reasonable jury would find him to be credible and that the result would be different. We don't know what the jury in Corzell Cole's case would have done. They didn't hear this. But if you're saying that that's the standard, we have what a reasonable jury did, correct? And, Guy, are you saying that what they found was not reasonable? What I'm saying is that we don't know the full extent of the evidence that was presented in Traveris Guy's case. That is why we have separate trials, in this case separate trials, but why the law separates out whether somebody, on an accountability theory, can be convicted, even though the principal is found innocent or not guilty. The problem is that there could be some other sort of evidence that was admissible at Traveris Guy's case that might not be admissible here. We're engaging in speculation. But you're only accountable for the acts of the principal, right? True. Does that make any sense to the average person? You're found guilty on accountability theory of an offense that the principal was acquitted of? Well, that is the state of law, whether it makes sense. Sad, isn't it? I'm sorry? It seems sad. I mean, if we're really seeking justice and we're seeking for a just decision and for the right thing to happen, I have to agree with Justice Holder. Doesn't it seem inequitable that the individual that is only to be held accountable due to the actions of another is being held actually for something that the shooter or that the actor has been convicted of? The history of the law in Illinois is that that happens fairly frequently. The mere fact that somebody is acquitted, the principal is acquitted. But now that we have this new evidence that is available, doesn't it seem that to reach a just result, to have all of the information out that this would be something that everyone would want heard? Well, I must rely upon the standard that no reasonable juror would find them based upon all the evidence. So you're saying that Taveras Guy's testimony was so conclusive that no juror would have found him guilty based upon all the evidence. They didn't. I'm sorry, Cazale Cole. Excuse me. Cazale Cole. In fact, they did find him guilty. But not a first-degree murder. No, but certainly a contempt murder, which is a specific intent offense. But what we're talking about here is there is evidence that supports, on direct appeal, the support found all those factors that counsel discounts now, the position of the vehicle. But it's not merely the position of the vehicle. It's the fact that the gun, as soon as that door was open, the bullet started flying. It's the fact that the position of the vehicle, the fact that the defendant not only fled the crime scene, which might be understandable, but went to another jurisdiction. All that information was presented, presumably, in both cases. So what we're looking at here is whether or not Mr. Cole has made a substantial showing of actual innocence, that that's our standard, and we need to look at whether it's material and non-cumulative. We did not have anyone testify that Mr. Guy said that he was acting in self-defense. He didn't testify, and he wasn't available because he was a fugitive. So we can look at whether or not that's material, and whether or not we have a likelihood of a different result, which we do have a different result in another case, where this evidence is added to all of the evidence that was presented in Cole. The cases of Edwards and Anderson, particularly Edwards' Illinois Supreme Court case, is very similar. The defendant presented an affidavit of somebody who said, oh, the defendant had nothing to do with this, he wasn't involved in the shooting. They evaluated that evidence and said it wasn't sufficient to overcome all the other evidence in the case. So it's just the mere fact, essentially, I'm going to be saying that as long as you have an affidavit from somebody that says he doesn't have, he wasn't involved, then we need to consider that and send it back for a new trial. Don't we have more here, though? We have an affidavit which mirrors the testimony of the principal at trial, where granted it was found guilty, but it was found guilty of a lesser charge. Which principal? A guy, Travers' guy's affidavit. And what evidence is mirrored here? Didn't Travers' guy's affidavit mirror what he said at trial? At his trial, yes. That's correct. So these other cases don't have that fact pattern, do they? Well. So, I mean, we're not saying just present any affidavit from anywhere. This is an affidavit from someone who's tried and gave this testimony at trial. I think that's a distinction that really doesn't matter because the problem is you're looking at whether if you plug in Travers' guy's testimony into this trial with no reasonable juror found him guilty. Into Cole's trial. Into Cole's trial, correct. You're indicating that Travers' guy's testimony is completely mirrored. It's not. There are several important distinctions. He said he was in one lane of traffic when he wasn't. He said that it took about two minutes. The testimony of the passengers in the van was that Cole started flying immediately. There is conflicting evidence. As such, the jury would be allowed to discount that. So it's not so conclusive that the result would have been different on retrial. Does the timing of Travers' guy's affidavit raise any reliability issues with respect to that affidavit? Oh, certainly. I mean, even though it's consistent with his trial testimony, I mean, he is convicted. He has no more problems facing him as far as further charges. So, yes, I would go to his credibility as far as giving this testimony. And the trial court clearly considered that. They said, look, he's got nothing to lose here. So does that matter in our consideration here? Well, isn't reliability of the affidavit one of the Edwards standards? I mean, isn't that a component? Does it be reliable? Well, certainly. The evaluation of reliability was considered in Edwards. So I would suggest that if the trial judge here made that finding, he didn't say it in so many terms of this is not reliable, but the fact that he did not have anything to lose would go to the reliability issue. I think otherwise we've pretty much set forth the arguments in our brief. If there's no other questions. Thank you. Thanks, Mr. Arado. Ms. Bryson, some rebuttal? What about that reliability question? Well, you know, I want to talk about Edwards, I guess, for a minute. Because it's a case dealing with whether a defendant should gain motion or be granted leave to file a successive petition. Procedurally, we're at a different stage. Successive petitions are disfavored. That's clear from the case law. It's clear from having the additional requirement that you get leave to file. The standard is different. Edwards did not address the standard for second stage petitions. Edwards didn't change the standard. It didn't even talk about the standard. That wasn't the procedural posture of that case. We're still talking about substantial showing. So in that regard, it's different. In terms of reliability, should we be looking at reliability, we're talking about credibility then, I think. And credibility is a third-stage determination. Again, the case law has been clear in this state. First stage, second stage, we have to take as true, unless it's directly contradicted by something in the record. This isn't directly contradicted by something in the record. It adds new facts to the record. It adds new evidence. Well, I think Closing Counsel was saying it was contradicted by prior trial testimony of Cole. Cole? No, it's not contradicted. I think what he was talking about was maybe some discrepancies in Guy's testimony of his own trial as to, I think he mentioned. I think that's what I understood it the other way. Okay. But it's not contradicted. Of course, Cole has never inculpated himself in this case. He's never made a statement. That happened in Edwards. Again, a case that the state is relying on. In Edwards, the defendant, the accountable defendant who filed the PC, had initially made a statement that, well, yeah, this was a gang retaliation shooting, and we had this plan to go over to this other, it was an apartment building or something, and shoot somebody. And a bunch of my co-defendants, because there were like seven or eight guys involved in this, surrounded the building, and they shot at the building, and I just stood across the street and fired my gun up in the air. We don't have anything like that in this case. There's no statement from Corazelle Cole that there was some plan ahead of time to go out and commit an offense. We don't have something contradicting what Traveris Guy is saying. Well, we do have a guy that says, I was parked at an intersection and somebody started shooting at us, and then when the shooting was done, he blew town, left the whole jurisdiction. Right. And this court recognized in its decision in the prior appeal in this case that what Corazelle Cole did after does not necessarily indicate an intent to aid before or during. You needed a subjective intent to aid the principal. Well, is it evidence of subjective intent? It's something that can be considered, but this court in its last decision said that's not enough to overcome. We're looking at here, it's not enough to say just from that, that he intended before the shooting, especially in light of what we have as new testimony, this was not available. We talk about what Guy's jury convicted him of, second degree and attempt first degree. They had the opportunity to consider Guy's statement. Corazelle Cole has not had the opportunity. He couldn't have presented that if he wanted to. It is not his fault that Traveris Guy was really good at avoiding prosecution and didn't get brought back here until after Corazelle Cole was tried, convicted, sentenced. He didn't have control over that. So the timing, it's not something that he could have done anything about, and I would submit as a really minimal factor in this case, because Traveris Guy, it's undisputed, he was absent. Nobody had found him yet. Well, then they found him. And what he said at his trial is almost entirely consistent. The dispute that counsel points out has to do with, were they in the lane to go straight or the lane to turn? They were in a lane next to the van. Which lane was it? In the grand scheme of all the evidence in this case and the significance of what Traveris Guy is saying and what he said at his own trial, that it is consistent with his statement, is that we didn't plan this. This was a spontaneous act of self-defense. I feared for my life, I feared for Corazelle Cole's life, and I reacted to that. And whether or not we actually believe his statement, how credible that is, that doesn't come at this stage, right? It doesn't come at this stage. We're at the second stage. That is an assessment to be made at the third stage. Credibility findings in the case law on that is clear and consistent in Illinois. Credibility determinations are to be made at the third stage. Taken as true is the standard at the second stage. Taking what he said is true. Does it meet the Molestat test? And I would submit that it does, and I'd ask this court again, unless you obviously have other questions, I'd ask you to reverse and send it back for additional proceedings. Thank you. Thank you, Ms. Bryson. Thank you both for your arguments here this morning. The matter will be taken under advisement and written disposition. We'll be in a brief recess for a panel change for our last case of the morning, now afternoon. Thanks.